UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD H.,<br><br>                           Plaintiff,<br><br>     v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>                           Defendant. | CASE NO. C19-5985-MAT<br><br>ORDER RE: SOCIAL SECURITY<br>DISABILITY APPEAL |

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1967.[1] He has an 11th-grade education and a GED, and previously worked as a fast-food cook for about 30 years. (AR 37-38.) At the time of the

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

administrative hearing, Plaintiff was working part-time polishing silverware, folding napkins, and performing cleaning tasks at a convention center. (AR 41-42.)

Plaintiff applied for DIB in January 2017, alleging disability as of December 31, 2015. (AR 159-64.) That application was denied and Plaintiff timely requested a hearing. (AR 96-98, 102-06.)

On July 11, 2018, ALJ Keith Allred held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 30-72.) Shortly after the hearing, Judge Allred passed away and the case was reassigned to ALJ Lawrence Lee, who issued a decision finding Plaintiff not disabled on October 24, 2018. (AR 16-25.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on August 15, 2019 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had worked since the alleged onset date, but this work did not rise to the level of substantial gainful employment. (AR 19.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's diabetes mellitus and diabetic neuropathy. (*Id*.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (*Id*.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found Plaintiff capable of performing light work with additional limitations: he can lift/carry 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk for four hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  He can occasionally balance, stoop, crouch, kneel, and crawl.  He can occasionally climb ramps and stairs, and occasionally climb ladders, ropes, or scaffolds.  He can use his bilateral upper extremities for frequently reaching, handling, and fingering.  He cannot tolerate extremes of heat or cold, humidity, fumes, gases, or other pulmonary irritants.  He cannot tolerate exposure to heavy vibration or hazards in the workplace, such as moving equipment and unprotected heights.  (AR 20.)  With that assessment, the ALJ found Plaintiff unable to perform past relevant work.  (AR 23.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of the VE, the ALJ found Plaintiff transitioning to other representative occupations, such as cashier II, marker II, and storage rental clerk.  (AR 23-24.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in discounting his subjective symptom testimony, and failing to address the treatment notes of Plaintiff's podiatrist. Plaintiff also alleges that his case should be remanded because the ALJ who held the administrative hearing was not properly appointed under the Appointments Clause of the United States Constitution at the time of the hearing. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed, and that Plaintiff forfeited his Appointments Clause challenge by not raising it during the administrative proceedings.

<u>Subjective symptom testimony</u>

The ALJ discounted Plaintiff's allegations of an inability to work due to foot pain that results in sitting and standing limitations, finding those allegations to be inconsistent with the medical opinions as well as Plaintiff's activities. (AR 21-22.) Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff argues that the ALJ's findings do not explain why the ALJ did not credit Plaintiff's alleged need to elevate his legs during the workday, even though the ALJ mentioned this allegation specifically. Dkt. 12 at 4 (citing AR 20). But none of Plaintiff's medical providers opined that Plaintiff required such a limitation (AR 79-81, 92-93, 403-07, 425-26) and the ALJ explained that he credited the opinion evidence over Plaintiff's subjective allegations because the medical opinions were consistent with the medical record. (AR 21.)

Plaintiff contends that because the medical opinions do not explicitly find that Plaintiff does not need to elevate his legs to avoid swelling, the opinions are consistent with his allegations

and therefore do not provide a basis for discounting his testimony. Dkt. 14 at 3-4. Indeed, none of the medical opinions explicitly reference a need (or lack thereof) for Plaintiff to elevate his legs, and although this fact could be interpreted as consistent with Plaintiff's allegations, it is also consistent with the ALJ's decision. Therefore, because the evidence can be reasonably interpreted in a way that supports the ALJ's decision, the Court affirms the ALJ's interpretation. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### Medical evidence

Plaintiff's treating podiatrist, Natalie Chu, DPM, treated Plaintiff for infected foot wounds in March 2016. (AR 311-26.) After excusing Plaintiff from working due to his being inability to bear weight on his right foot as a result of the infection (AR 314), Dr. Chu opined that Plaintiff could return to work in April 2016, but was limited to performing two three-hour shifts per week, not on consecutive days. (AR 343.) Dr. Chu indicated that she would reevaluate those limitations in a few weeks, to see if his wounds continued to heal even with that work activity. (*Id*.) The next week, Dr. Chu told Plaintiff he could work three three-hour shifts per week, on alternating days. (AR 353.) The following week, Dr. Chu told Plaintiff he could continue with that schedule. (AR 356.) In early May, Dr. Chu told Plaintiff he could continue that work schedule, and increase to four shifts and then to five shifts "with slow progression." (AR 359.) At that appointment, Dr. Chu told Plaintiff to return to his previous doctor for diabetic footcare in two weeks to ensure that his wounds continued to heal and for further guidance on work restrictions, and she discharged him from her wound care clinic at that time. (*Id*.)

The ALJ did not discuss the work restrictions Dr. Chu placed on Plaintiff during the spring

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 5

of 2016. Plaintiff argues that the ALJ's failure to do so was harmful error, because the work restrictions Dr. Chu described are inconsistent with the ALJ's RFC assessment and therefore needed to be addressed. Dkt. 12 at 4.

The work restrictions indicated by Dr. Chu are indeed inconsistent with the ALJ's RFC assessment, but were explicitly temporary in nature, during the time of Plaintiff's recuperation from his foot wounds. Dr. Chu's notes suggest that she expected him to return to working up to his typical schedule "with slow progression", and that she expected another provider, who would be treating Plaintiff on an ongoing basis, to advise him on any future work restrictions. (AR 359.) Because there is no evidence suggesting that Dr. Chu intended her work restrictions to be in place for at least twelve months — and the context of her notes suggests the opposite — Dr. Chu's treatment notes do not describe limitations that would satisfy the durational requirement. *See* 42 U.S.C. § 423 (d)(1)(A) (disability means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months"); 20 C.F.R. §§ 404.1505, 1509 (to meet definition of disability, claimant must have a severe impairment preventing work; impairment must have lasted or be expected to last at least twelve months). Accordingly, Dr. Chu's treatment notes containing temporary work restrictions do not constitute significant, probative evidence that the ALJ was required to discuss. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ "not required to discuss evidence that is neither significant nor probative").

Appointments Clause

Article II, Section 2, Clause 2 of the United States Constitution ("the Appointments Clause") requires that inferior officers be appointed by the president, a court of law, or a head of

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 6

a department. On June 21, 2018, the United States Supreme Court held that Securities and Exchange Commission (SEC) ALJs are inferior officers subject to the Appointments Clause, and that a timely objection to the invalid appointment of an SEC ALJ must be remedied by a new hearing before a properly appointed ALJ. *Lucia v. S.E.C.*, __ U.S. ___, 138 S.Ct. 2044, 2055 (2018) ("'[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." (quoting *Ryder v. United States*, 515 U.S. 177, 182-83 (1995))).

In response to *Lucia*, the Commissioner ratified the appointments of Social Security ALJs on July 16, 2018. *See* Social Security Ruling (SSR) 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019). The Commissioner also issued guidance instructing the Appeals Council to grant requests for review of decisions predating July 16, 2018, to any claimant who raised an Appointments Clause challenge either to the Appeals Council or to the ALJ. SSR 19-1p, 2019 WL 1324866.

In this case, the decision of ALJ Lee was issued on October 24, 2018, after ALJ Lee's appointment had been ratified, but the appointment of ALJ Allred had not been ratified at the time of the July 11, 2018 hearing. Plaintiff contends that he had a constitutional right to a *hearing* before a constitutionally appointed ALJ, even though he acknowledges that the *decision* was written by a constitutionally appointed ALJ. Dkt. 12 at 9-10.

Plaintiff also argues that he did not forfeit his Appointments Clause challenge by not raising it before the agency, relying primarily on a Third Circuit case, *Cirko o/b/o Cirko v. Comm'r of Social Sec.*, 948 F.3d 148 (3d Cir. 2020), and district court cases following *Cirko*. Dkt. 12 at 7-9. Thus, Plaintiff's Appointments Clause challenge has two parts: (1) whether a constitutional deficiency in an ALJ's appointment at the time of the hearing can give rise to an Appointments Clause challenge to a decision written by a different ALJ who had been constitutionally appointed;

and (2) whether Plaintiff forfeited his Appointments Clause challenge by not raising it during the administrative proceedings.

As to the first question, Plaintiff cites no case finding that a constitutional deficiency as to the ALJ who presided over the hearing but did not issue the decision gives rise to a due process violation of the Appointments Clause. In *Lucia*, the same ALJ held a hearing and issued a decision, and that decision became the final decision of the SEC when the SEC declined to review the ALJ's decision. 138 S.Ct. at 2054. Thus, *Lucia* itself does not suggest that merely presiding over a hearing would confer the type of "officer" status that would be subject to the Appointments Clause.

*Lucia* does, however, rely on an older case that defines the duties of an "officer" subject to the Appointments Clause, *Freytag v. C.I.R.*, 501 U.S. 868 (1991). *Freytag* involved proceedings in the U.S. Tax Court, where judges were appointed by the president, and the chief judge appointed "special trial judges" to assist them. 501 U.S. 870-71. The *Freytag* court concluded that the special trial judges were "inferior officers" for purposes of the Appointments Clause, even though they typically did not have the power to issue final decisions, because they exercised significant discretion in carrying out "important functions" such as taking testimony, conducting trials, ruling on the admissibility of evidence, and enforcing compliance with discovery orders. 501 U.S. at 881-82.

In this case, ALJ Allred undoubtedly had the authority to render a decision on Plaintiff's disability claim, and would have presumably done so had he not died before such a decision could be issued. ALJ Allred did not, however, "adjudicate" Plaintiff's case, because he did not issue the ultimate disability determination that was rendered final by the actions of the Appeals Council. Merely presiding over an administrative hearing is not akin to the broad powers described in *Freytag* because ALJs do not typically make any discretionary findings or rulings during the

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 8

hearings themselves, but rather do so in the subsequent written decision that constitutes the disability determination.  *See, e.g.*, Hearings, Appeals and Litigation Law Manual I-2-8-5, *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-8-5.html (last visited June 2, 2020) (holding that an ALJ's decision is not final until the ALJ signs the decision).  Furthermore, as noted above, SSR 19-1p creates a procedure applicable to *decisions* issued before July 16, 2018 (the date on which the Commissioner ratified the appointments of the ALJs) — as opposed to hearings held before that date —which suggests that it is the ALJ's status on the date of the decision that is relevant for purposes of the Appointments Clause.[2]  2019 WL 1324866 at *3.

Because ALJ Lee's decision represents the adjudication of Plaintiff's case, and ALJ Lee's appointment was constitutionally proper at the time the decision was entered, the Court finds that Plaintiff has failed to a raise a valid Appointments Clause challenge to the adjudication of his case.  Accordingly, the Court need not address whether Plaintiff's challenge was timely raised.

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this 4th day of June, 2020.

Mary Alice Theiler
United States Magistrate Judge

---

[2] Admittedly, SSR 19-1p also refers to an ALJ's authority to "hear and decide" a claim, and characterizes Appointments Clause challenges as questioning whether "the ALJ who presided over the claimant's hearing was properly appointed[.]"  2019 WL 1324866, at *3.  But because the procedure set out by SSR 19-1p clearly references only the date of the ALJ's decision as relevant for purposes of evaluating the timeliness of a claimant's Appointments Clause challenge, the Court focuses on that portion of the ruling.  The Court is aware that SSRs do not have the force of law, but courts nonetheless defer to SSRs unless they are plainly erroneous or inconsistent with the Social Security Act or regulations; the confusing language used in this SSR does not rise to that level.  *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).